UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS

EARL MITCHELL                                      NO.: 16-00099-BAJ-RLB

## RULING AND ORDER

Before the Court is the **Motion to Suppress (Doc. 16)** filed by Defendant. Defendant seeks to suppress evidence seized as a result of a stop and frisk that was conducted on June 21, 2016, as well as statements that Defendant allegedly made after the evidence was seized.  The United States of America ("Government") filed a memorandum in opposition to the Motion. (*See* Doc. 18).  On February 6, 2017, the Court held an evidentiary hearing on the Motion.  The Government and Defendant subsequently filed post-hearing briefs. (*See* Docs. 30, 31).  For the reasons explained herein, Defendant's **Motion to Suppress (Doc. 16)** is **DENIED**.

## I.    BACKGROUND

On June 21, 2016, at approximately 10:30 p.m., Officer Nicholas Collins ("Officer Collins") of the Baton Rouge City Police Department ("BRCPD") was on a routine patrol of a neighborhood of Baton Rouge, Louisiana, that is known as "CC Lockdown."[1]  (Doc. 29, Hr'g Tr. at p. 11, ll. 1-4; *id.* at p. 35, l. 7).  Since he commenced

---

[1] Officer Collins testified that the CC Lockdown neighborhood is comprised of the area between Chippewa Street and Choctaw Drive.  Doc. 29, Hr'g Tr. at p. 11, ll. 6-7.

JURY

his employment with BRCPD, Officer Collins regularly has patrolled the CC Lockdown neighborhood – an area in which "numerous homicides and violent crimes" have been committed and in which officers commonly effect arrests for drug crimes. (*Id.* at p. 11, ll. 18-19; *id.* at p. 12, ll. 5-7). Officer Collins was patrolling the area in a white, unmarked Dodge Charger. (*Id.* at p. 13, l. 5). Although Officer Collins's vehicle did not feature any external markings identifying it as a police car, it is "obvious" that the vehicle indeed is a police car because of the spotlight on the vehicle's driver's side, the distinctive wheels, and the widely shared knowledge among residents of the neighborhood that police officers drive white Dodge Chargers.[2] (*Id.* at p. 13, ll. 6-7, 10-12, 15-17).

Officer Collins was travelling westbound on Seneca Street. (*Id.* at p. 15, ll. 8-10). As he crossed Cedar Avenue, Officer Collins looked to his left and saw "headlights coming in [his] direction and . . . an individual . . . walking in the middle of the street . . . directly in front of the headlights."[3] (*Id.* at p. 16, ll. 6-9). Officer Collins then observed the individual, Defendant, "grab[] his waistband and . . . scurr[y] off," apparently upon seeing Officer Collins's vehicle. (*Id.* at p. 16, ll. 17-18). Defendant's act of grabbing his waistband piqued Officer Collins's interest, causing him to believe that Defendant may have been in possession of contraband because, according to Officer Collins, "when people have something and they see law enforcement, they[ will] grab that object, whether it be something in their pocket,

_____

[2] Officer Collins testified that there are "rap songs about the white Dodge Chargers that the police ride." Doc. 29, Hr'g Tr. at p. 13, ll. 16-17.

[3] There are no pedestrian sidewalks on the streets at issue. Doc. 29, Hr'g Tr. at p. 39, ll. 13-16.

back waistband, back pocket[,] or front waistband." (*Id.* at p. 17, ll. 17-20). Defendant

then "walked away from [Officer Collins] in a very, very fast way," (*id.* at p. 18, ll. 10-

11), which Officer Collins described as an "unprovoked flight," (*id.* at p. 17, l. 10).

Based on Officer Collins's experience, he testified that "every other time" that a

person has grabbed his waistband and fled at the sight of police, that person "has had

something that they did not want the police to have." (*Id.* at p. 18, ll. 16-17). Officer

Collins observed Defendant's conduct from a distance of approximately fifty yards,

(*id.* at p. 17, l. 25), and the area in which the events took place was described by

Officer Collins as "sparsely lit [by] some lights on [the telephone] poles," (*id.* at p. 15,

ll. 21-22), though the headlights of the car in front of which Defendant was walking

provided additional light,[4] (*id.* at p. 50, ll. 21-22).

Officer Collins testified that Defendant then "went into the yard of a house

that[ is] directly on the corner" of Seneca Street and Cedar Avenue, after which

Officer Collins observed Defendant "get[] into the rear passenger seat of a vehicle

[that was] parked in that yard." (*Id.* at p. 19, ll. 6-9). Officer Collins was aware that

the person who resided at the house had been convicted of a drug crime, and according

to Officer Collins, neighbors had reported that narcotics transactions had been taking

place at the house. (*Id.* at p. 19, ll. 13-17). Officer Collins then parked his vehicle

behind the vehicle that he observed Defendant enter, prohibiting that vehicle from

exiting the yard. (*Id.* at p. 21, l. 24; *id.* at p. 22, l. 3).

---

[4] Officer Collins testified that the headlights of the car "provided ample light." Doc. 29, Hr'g Tr. at p. 50, l. 22.

Officer Collins first made contact with the person in the driver's seat,[5] who was the resident of the home who had a previous narcotics conviction and was on parole at the time. (*Id.* at p. 23, ll. 7-16). Officer Collins then made contact with Defendant, who was seated in the rear seat of the vehicle, asking Defendant to step out of the vehicle to inquire into Defendant's blocking the roadway. (*Id.* at p. 23, ll. 12-14; *id.* at p. 24, ll. 8-9; *id.* at p. 54, ll. 4-8). After Defendant exited the vehicle, Officer Collins ordered him to stand against the vehicle so that Officer Collins could perform a frisk for weapons.[6] (*Id.* at p. 24, ll. 14-18). Officer Collins – who "figured [that Defendant] had something in his waistband," (*id.* at p. 29, l. 24) – decided to frisk Defendant to "make sure [that] Defendant did[ not] have a gun on him to . . . shoot [Officer Collins] or somebody else," (*id.* at p. 27, ll. 4-5, 9). Officer Collins testified that Defendant was "nervous" and "shaking a little bit," (*id.* at p. 24, ll. 20-21), standing with his "legs . . . clenched . . . together," (*id.* at p. 26, l. 2). As Officer Collins's hand approached Defendant's waistband during the frisk, Defendant "pinned his body up against the car, squishing [Officer Collins's] hand between [Defendant's] body and the car." (*Id.* at p. 27, ll. 17-19). At that point, Officer Collins believed that Defendant was going to "fight" him. (*Id.* at p. 28, ll. 5-6). Officer Collins ordered Defendant to back away from the car and then "attempted to back [Defendant] away from the car," after which Defendant "went limp . . . and fell to the ground." (*Id.* at p. 28, ll. 13-16). Officer Collins then "grabbed [Defendant's] shoulders and . . . lifted [Defendant] back onto

---

[5] A person was also seated in the front passenger seat. Doc. 29, Hr'g Tr. at p. 45, ll. 8-11.

[6] At this point, other police units arrived on the scene. *See* Doc. 29, Hr'g Tr. at p. 47, ll. 20-25.

his feet." (*Id.* at p. 28, ll. 21-22). When Defendant regained his footing, Officer Collins "heard a clank, some noise on the ground, [and] looked down [to see that] a firearm had just come out of [Defendant's] pant[] leg." (*Id.* at p. 28, l. 25; *id.* at p. 29, ll. 1-2).

Officer Collins then resumed frisking Defendant, secured Defendant in his police vehicle, and retrieved the firearm. (*Id.* at p. 30, ll. 10-12). After performing a record check for the firearm's serial number, Officer Collins determined that the weapon had been reported stolen, (*id.* at p. 30, ll. 24-25; *see id.* at p. 31, ll. 12-14), and after performing a record check for Defendant's name, Officer Collins determined that Defendant was a convicted felon, (*id.* at p. 31, ll. 20-22). Officer Collins then informed Defendant of his rights under *Miranda v. Arizona*, which Defendant stated that he understood. (*Id.* at p. 31, l. 25; *see id.* at p. 32, ll. 17-20). Defendant then stated that he "found [the gun] under the interstate" and, in response to Officer Collins's questions regarding his being prohibited from possessing a firearm due to his status as a convicted felon, that he was "just taking [his] lick." (*Id.* at p. 33, ll. 16, 19).

## II.     LEGAL STANDARD

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993) (quoting *United States v. Smith,* 978 F.2d 171, 176 (5th Cir. 1992)).  When a search or seizure is conducted without a warrant, however, the *government* bears the burden of proving that the search was valid.  *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Castro*, 166 F.3d 728, 733 n.7 (5th Cir. 1999)).

## III.     DISCUSSION

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968).  In determining whether the seizure of a person is reasonable, and therefore constitutionally permissible under the Fourth Amendment to the United States Constitution, the Court must analyze (1) "whether the officer's action was justified at its inception, and [(2)] whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20.

The Government asserts that Officer Collins's actions were permissible pursuant to the standards espoused by the United States Supreme Court in *Terry v. Ohio*.  Specifically, the Government argues that (1) Officer Collins's actions were

justified as an investigatory stop due to Defendant's committing a traffic violation by impeding a roadway and due to his suspicious conduct after spotting Officer Collins's vehicle and (2) Officer Collins's actions were reasonably related in scope to his purposes for initiating the stop.  After considering the arguments advanced by the Government and Defendant, the facts of this case, and the applicable law, the Court concludes that Officer Collins's actions were permissible pursuant to *Terry*, and therefore the evidence seized in plain view and the statements made by Defendant shall not be suppressed.

### A.    Officer Collins's Actions Were Justified at Their Inception

"Under *Terry*, if a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime, the officer may briefly detain – that is, 'seize' – the person to investigate." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014).  An officer may permissibly stop and seize a person if the officer "has an objectively reasonable suspicion" that the person has committed "some sort of illegal activity, such as a traffic violation." *United States v. Harris*, 566 F.3d 422, 434 (5th Cir. 2009) (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)) (internal quotation marks omitted).  "Such a belief must be founded on specific and articulable facts rather than on a mere suspicion or 'hunch.'"  *Id.* (quoting *United States v. Sanders*, 994 F.2d 200, 203 (5th Cir. 1993)).  "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion," and "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are

7

sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

The evidence indicates that Officer Collins observed Defendant impeding an automobile from continuing to travel down Cedar Avenue. (See *id.* at p. 16, ll. 6-9). This observation is a "specific and articulable fact[]" that provided Officer Collins reasonable suspicion that Defendant was committing a violation of a traffic law, Louisiana Revised Statutes section 14:100.1.[7] *Hill*, 752 F.3d at 1033. Additionally, Defendant's presence in an area in which crime frequently occurs, taken together with his act of grabbing his waistband and "scurrying" to a nearby yard upon spotting Officer Collins's police vehicle, provided Officer Collins further reasonable suspicion that some sort of criminal activity was afoot. *See Wardlow*, 528 U.S. at 124. Therefore, Officer Collins permissibly could stop and seize Defendant to investigate the traffic violation that he reasonably believed had occurred, as well as any additional criminal activity that he reasonably believed to be afoot due to Defendant's evasive conduct. *Hill*, 752 F.3d at 1033.

---

[7] Louisiana Revised Statutes section 14:100.1 makes it unlawful to "obstruct the free, convenient, and normal use of any public sidewalk, street, highway, bridge, alley, road, or other passageway, or the entrance, corridor, or passage of any public building, structure, water craft, or ferry, by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon or therein." La. Rev. Stat. § 14:100.1.

B.     **Officer Collins's Actions Were Reasonably Related in Scope to the Circumstances that Justified the Interference in the First Place**

An officer's actions after legitimately stopping and seizing a person must be "reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). "[A] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id.* During such a seizure, an officer may conduct a "reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* "And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

In an effort to investigate the traffic violation that he reasonably believed Defendant had committed, Officer Collins ordered Defendant to exit the vehicle that Defendant had entered.  (*Id.* at p. 23, ll. 12-14; *id.* at p. 24, ll. 8-9; *id.* at p. 54, ll. 4-8).  Officer Collins, in light of his experience, determined that Defendant may have been concealing a weapon in his waistband due to his act of grabbing his waistband

9

and fleeing to a nearby yard upon spotting Officer Collins's police vehicle, (*id.* at p. 27, ll. 4-5, 9); Officer Collins testified that "every other time" that a person has grabbed his waistband and fled at the sight of police, that person "has had something that they did not want the police to have," (*id.* at p. 18, ll. 16-17). Officer Collins's suspicion that Defendant was concealing a weapon was bolstered during the seizure itself due to Defendant's conduct; Defendant was standing with his "legs . . . clenched . . . together," (*id.* at p. 26, l. 2), and he was acting "nervous" and "shaking a little bit," (*id.* at p. 24, ll. 20-21). Thus, the Court finds that it was reasonable for Officer Collins to perform a frisk for weapons during his seizure of Defendant. *See id.*

During the frisk, Defendant "pinned his body up against the car, squishing [Officer Collins's] hand between [Defendant's] body and the car" as Officer Collins's hand approached Defendant's waistband, (*id.* at p. 27, ll. 17-19), which caused Officer Collins to believe that Defendant was going to "fight" him, (*id.* at p. 28, ll. 5-6). It was thus reasonable for Officer Collins to stand Defendant upright after Defendant intentionally fell to the ground to resume the frisk for weapons because it was readily apparent at that point that Defendant presented a danger to Officer Collins and was attempting to conceal something in his waistband. *See id.* Therefore, because the seizure lasted mere minutes and Officer Collins had reason to believe that Defendant was armed and dangerous, Officer Collins's actions were "reasonably related in scope to the circumstances which justified the [seizure of Defendant] in the first place." *Id.* at 20.

### C.    The Firearm Was in Plain View and Was Properly Seized

In order to seize evidence that a police officer encounters in plain view, "the officer [must] be lawfully located in a place from which the object can be plainly seen, [and] he or she must also have a lawful right of access to the object." *Horton v. California*, 496 U.S. 128, 137 (1990). "[N]ot only must the item be in plain view; its incriminating character must also be 'immediately apparent.'" *Id.* at 136-37 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)). Even if a firearm's "incriminating character" is not "immediately apparent" due to the officer's lack of awareness that the possessor is a convicted felon, a temporary seizure of the weapon is warranted if a "firearm . . . could be accessed by someone at the scene and used against officers or others." *United States v. Roberts*, 612 F.3d 306, 313 (5th Cir. 2010).

When the firearm fell to the ground from Defendant's pant leg, (*id.* at p. 28, l. 25; *id.* at p. 29, ll. 1-2), it was in Officer Collins's plain view, and he had a "lawful right of access to the object" due to his frisking Defendant for weapons at that very location. *Horton*, 496 U.S. at 137. Further, Officer Collins was permitted to seize the weapon before conducting a check for Defendant's prior criminal history because there were other persons located inside the vehicle on the scene who may have attempted to use the firearm. *See Roberts*, 612 F.3d at 313. (*See id.* at p. 57, ll. 2-3). Therefore, the firearm was in plain view, and Officer Collins was permitted to seize the firearm for the safety of himself and others. *See Horton*, 496 U.S. at 136-37; *Roberts*, 612 F.3d at 313.

11

IV.     CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion to Suppress (Doc. 16)** is **DENIED**.

**IT IS FURTHER ORDERED** that the **pretrial conference** in this matter shall be held on **April 20, 2017**, at **4:30 p.m.** in the Chambers of Chief Judge Brian A. Jackson.

**IT IS FURTHER ORDERED** that the **jury trial** in this matter shall be held on **May 2 through May 3, 2017**, in Courtroom 2, Russell B. Long Federal Building & United States Courthouse, 777 Florida Street, Baton Rouge, Louisiana 70801.

Baton Rouge, Louisiana, this $\underline{5th}$ day of April, 2017.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**